UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOBLE SECURITY, INC. and MEIR AVGANIM, | **MEMORANDUM** |
| Plaintiffs and Counter-Defendants, | **OPINION & ORDER** |
| - against - | 16 Civ. 9129 (PGG) |
| ACCO BRANDS CORPORATION, | |
| Defendant and Counter-Claimant. | |

PAUL G. GARDEPHE, U.S.D.J.:

   Plaintiff Meir Avganim designed and patented a security slot and lock for laptops and other portable electronic devices.  Avganim licensed patents related to his security slot and lock to Plaintiff Noble Security, Inc.  In this lawsuit, Plaintiffs claim that a rival manufacturer of computer locks – Defendant ACCO Brands – has infringed Avganim's patents:  United States Patent Nos. 9,137,911 (the "'911 Patent"), 9,549,476 (the "'476 Patent"), 9,624,697 (the "'697 Patent") and 9,784,019 (the "'019 Patent").  Defendant has brought counterclaims against Plaintiffs for infringement of two patents that it holds:  United States Patent Nos. 8,842,422 (the "'422 Patent") and 10,031,558 (the "'558 Patent").

   The parties have presented their proposed construction of claims in Plaintiffs' '697 Patent and Defendant's '422 and '588 Patents, pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).  This Court addresses the disputed terms below.

## BACKGROUND

### I.  PLAINTIFFS' '697 PATENT

   The '697 Patent is "directed to a computer security lock."  ('697 Patent (Dkt. No. 54-1), Ex. C at col. 1:28-30)  Claim 1 concerns

> [a] lock, for being locked inside a computer security cavity having [a certain shape], . . . said lock comprising
>
>> a lock body;
>>
>> first and second wedge lock elements configured to respectively engage said first and second sidewalls, said first and second wedge lock elements being movable between an unlocked position and a locked position, wherein said wedge lock elements are engaged with and bear against said side walls in said locked position; and
>>
>> a moveable pin selectively moveable in a first direction and in an opposite second direction, wherein upon moving in the second direction, said moveable pin causes said first and second wedge lock elements to move to said locked position, and said first and second wedge locked elements being supported by said lock body; and
>>
>> wherein each said first and second wedge lock elements includes a respective flat surface, complementary in shape to said side walls, that extends in the same direction and lies against and serves to anchor said respective wedge lock element against one of said sidewalls, when said first and second wedge lock elements have been moved to the locked position.

(Id. at col. 7:27-61)

## II.   DEFENDANT'S PATENTS

Defendant's '422 Patent is "directed to security apparatuses, systems, and methods for using such security apparatuses" as well as to "lock interface members and systems and methods incorporating such lock interface members."  ('422 Patent (Dkt. No. 56-1) at col. 1:65-2:2)  Claim 1 concerns

> [a] security apparatus for use with a lock interface member having an aperture and a protrusion, the security apparatus comprising:
>
>> a head comprising
>>
>> a body,
>>
>> an engagement element extending from the body and adapted to be inserted into the aperture of the lock interface member, the engagement element being movable relative to the body while

inserted in the aperture to engage the protrusion of the lock interface member, and

a stabilizing element extending from the body and adapted to be inserted into the aperture of the lock interface member with the engagement element, the stabilizing element being fixed to the body to inhibit the head from being moved relative to the lock interface member while the engagement element is inserted in the aperture, thereby inhibiting the engagement element from being removed from the aperture; and

a security device attached to the head.

(Id. at col. 28:14-34)  Claim 17 concerns "[t]he security apparatus of claim 1, wherein the lock interface member is associated with a portable electronic device."  (Id. at col. 29:25-27)

The '558 Patent is also "directed to security apparatuses, systems, and methods for using such security apparatuses" as well as to "lock interface members and systems and methods incorporating such lock interface members."  ('558 Patent (Dkt. No. 56-5) at col. 2:6-10)  Claim 1 concerns

[a] security apparatus for a portable electronic device, the security apparatus comprising:

a locking head including

a base,

an engagement element extending from the base and adapted to be inserted into an aperture of the portable electronic device, the engagement element including a wedge-shaped engagement portion configured to engage part of the portable electronic device when inserted into the aperture, and

a stabilizing element extending from the base and slidable along a side of the engagement element into the aperture of the portable electronic device, thereby inhibiting the engagement element from being removed from the aperture; and

a security device attached to the locking head.

(Id. at col. 28:60-29:8)

3

III.    **PROCEDURAL HISTORY**

The Complaint was filed on November 23, 2016 (Dkt. No. 1), and the Amended Complaint was filed on January 6, 2017.  (Dkt. No. 9)

On March 8, 2017, Plaintiffs filed the Second Amended Complaint ("SAC"), which asserts claims for patent infringement, false advertising under the Lanham Act, violations of New York General Business Law, Sections 349 and 350, and tortious interference of existing and potential business relationships.  (SAC (Dkt. No. 19) ¶¶ 55-86)

On June 1, 2017, Defendant moved to dismiss the SAC.  (Dkt. No. 26)

On March 31, 2018, this Court granted in part and denied in part Defendant's motion to dismiss.  This Court granted Defendant's motion as to Plaintiffs' Lanham Act claim, New York General Business Law claim, tortious interference claim, and claim for direct infringement of the '476 Patent.  This Court denied Defendant's motion as to Plaintiffs' claim of indirect infringement of the '911 Patent and the '705 Patent Application.[1]  (March 31, 2018 Order (Dkt. No. 34) at 26)[2]

On April 16, 2018, Defendant filed its Counterclaims.  (Dkt. No. 36)

The Third Amended Complaint ("TAC") was filed on October 19, 2018.  (Dkt. No. 54)

On April 16, 2019, this Court conducted a <u>Markman</u> hearing at which the parties presented their proposed constructions of certain claims in Plaintiffs' '697 Patent and

_____

[1] During the pendency of the motion to dismiss, the '705 Patent Application was approved as to the '697 Patent.  ('697 Patent (Dkt. No. 54-1), Ex. C at 47)
[2] The page numbers referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files system.

Defendant's '422 and '588 Patents.  (See Hearing Tr. (Dkt. No. 90))  The parties also filed post-hearing briefing.  (Dkt. Nos. 93, 96)

## DISCUSSION

### I.   LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  Aventis Pharm. Inc. v. Amino Chems. Ltd., 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005)).  In construing a patent claim, which is a question of law, courts "should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing Markman, 52 F.3d at 949).  However, "limitations from elsewhere in the specification will not be read in where . . . the claim terms are clear."  Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1371 (Fed. Cir. 2002) (citations omitted).  "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims."  Embrex, Inc., v. Serv. Eng'g Corp., 216 F.3d 1343, 1347 (Fed. Cir. 2000) (quoting Scripps Clinic v. Genentech, Inc., 927 F.2d 1565, 1580 (Fed. Cir. 1991)).

Claim terms are generally "given their ordinary and customary meaning" as understood by a person of "ordinary skill in the art at the time of invention."  Aylus Networks, Inc. v. Apple Inc., 856 F.3d 1353, 1358 (Fed. Cir. 2017) (citation omitted).  The ordinary meaning of a claim term is its meaning "to the ordinary artisan after reading the entire patent."  Id. (quoting Phillips, 415 F.3d at 1321).

"If . . . the claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim, 'we turn to the remaining intrinsic evidence, including

the written description, to aid in our construction of that term.'" Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1361 (Fed. Cir. 2013) (quoting Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1326 (Fed. Cir. 2001). "[C]laims 'must be read in view of the specification, of which they are a part.'. . . [T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" Phillips, 415 F.3d at 1315 (quoting Markman, 52 F.3d at 979; Vitronics, 90 F.3d at 1582).  Through the specification, a patentee "can 'act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning.'" Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc., 467 F.3d 1370, 1376 (Fed. Cir. 2006) (quoting Chef Am., Inc. v. Lamb–Weston, Inc., 358 F.3d 1371, 1374 (Fed. Cir. 2004)). While courts "us[e] the specification to interpret the meaning of a claim," they must "avoid the danger of reading limitations from the specification into the claim" itself.  Phillips, 415 F.3d at 1323. "[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments."  Id. (citations omitted).

A court may consider extrinsic evidence, such as dictionaries and treatises, but such extrinsic evidence is "generally of less significance than the intrinsic record."  Takeda Pharma. Co. Ltd. v. Zydus Pharma. USA, Inc., 743 F.3d 1359, 1363 (Fed. Cir. 2014) (citing Phillips, 415 F.3d at 1317).  If the meaning of the claim is clear from "the intrinsic evidence alone," then "it is improper to rely on extrinsic evidence."  Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372, 1377 (Fed. Cir. 2005) (quoting Vitronics, 90 F.3d at 1582).

35 U.S.C. § 112(f) applies a special rule of construction to so-called "means-plus-function" elements of a patent claim.  Section 112(f) provides:

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f).  "Section 112(f) allows patentees to put structural details into the specification and build into the literal coverage of the claim a certain scope for equivalents in performing a defined function.  The price of using this form of claim, however, is that the claim be tied to a structure defined with sufficient particularity in the specification." Ibormeith IP, LLC v. Mercedes-Benz USA, LLC, 732 F.3d 1376, 1379 (Fed. Cir. 2013) (citations omitted).

When determining whether a given element of a claim is a means-plus-function element under Section 112(f), "the essential inquiry [is] 'whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.'" Zeroclick, LLC v. Apple, Inc., 891 F.3d 1003, 1007 (Fed. Cir. 2018) (quoting Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1348 (Fed. Cir. 2015)).  That determination is made "on an element-by-element basis, and in light of evidence intrinsic and extrinsic to the asserted patents." Id. (citations omitted).  "[T]he failure to use the word 'means' [] creates a rebuttable presumption . . . that [Section 112(f)] does not apply." Williamson, 792 F.3d at 1348 (quoting Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 703-04 (Fed. Cir. 1998)).  "When a claim term lacks the word 'means,' the presumption can be overcome and [Section 112(f)] will apply if the challenger demonstrates that the claim term fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" Id. at 1349 (alteration in original) (quoting Watts v. XL Sys., Inc., 232 F.3d 877, 880 (Fed. Cir. 2000)).

II.      **ANALYSIS**

    A.      **Disputed Terms in Plaintiffs' '697 Patent**

        1.      **"Moveable Pin" and "Selectively
                Moveable in a First Direction and
                in an Opposite Second Direction"**

The parties dispute the meaning of the term "moveable pin," as used in Plaintiffs'
'697 Patent.  Plaintiffs argue that this term means "moveable locking element, slidable or
rotatable."  (Jt. Claim Construction Chart (Dkt. No. 68) at 6)  Plaintiffs further contend that
"selectively moveable in a first direction and in an opposite second direction" means "the
moveable locking pin that is able to 'move' in one direction and in a direction opposite to the
'one direction.'"  (Id. at 7)

Defendant argues that "moveable pin" means "slidable locking element," and that
this term means "sliding straight into and out of the cavity."  (Id. at 6-7)

As to "moveable pin," Defendant's primary argument is that "in the specification
[Avganim] chose to use a patent law term of art – describing the 'present invention' as a whole
as having the 'slidable' locking element – and that choice expressly limits the scope of Noble's
alleged invention."  (Def. Opening Br. (Dkt. No. 81) at 27)  Plaintiffs counter that Defendant
"seeks to import a limitation from a preferred embodiment," when in fact Avganim "did not
disavow any claim coverage by using the terminology 'the present invention' in [his] patent
specification."  (Pltf. Opp. Br. (Dkt. No. 76) at 26-27)

8

This Court agrees that Plaintiff Avganim did not disavow non-sliding movements in the '697 Patent.  Defendant's "present invention" argument is premised on the notion the Figures 4, 5, and 6 of the '697 Patent are the "present invention" described in claim 1.



('697 Patent (Dkt. No. 54-1), Ex. C at 50)  In particular, the '697 Patent states that "[w]ith reference to Figures 4-6, the locking principle of the present invention is described as follows." (Id. at col. 3:55-56)  But the plain language of claim 1 makes clear that Figures 4-6 are not described in that claim, which explicitly describes "first and second wedge lock elements . . . and a moveable pin."  (Id. at col. 7:41-48 (emphasis added))  Defendant appears to interpret the right

wedge in Figures 4-6 (labeled as "70") to be the "moveable pin." However, Figures 4-6 contain only two elements, and it is thus clear that claim 1 is not referring to Figures 4-6.

Defendant does not point to any other instance of "present invention" in which the feature of the "moveable pin" described in claim 1 appears. For this reason, Defendant's citation to Poly-Am., L.P. v. API Indus., Inc., 839 F.3d 1131 (Fed. Cir. 2016), is unavailing. (Def. Reply Br. (Dkt. No. 85) at 12) In Poly-Am., the court noted that "an inventor may disavow claims lacking a particular feature when the specification describes 'the present invention' as having that feature." 839 F.3d at 1138 (quoting Luminara Worldwide, LLC v. Liown Elecs. Co., 814 F.3d 1343, 1353 (Fed. Cir. 2016)). Here, however, the "present invention" statement regarding Figures 4-6 at most disavows features of the "locking principle" of the invention, but cannot disavow the different structure described in claim 1. Id. Moreover, the '697 Patent explicitly provides that "the present invention be limited not by the specific disclosure herein, but only be the appended claims." ('697 Patent (Dkt. No. 54-1), Ex. C at col. 7:24-25)

Defendant also contends that – by including certain statements in the specification – Plaintiffs "disavowed the rotating feature." (Def. Opening Br. (Dkt. No. 81) at 28) Defendant cites the following language in the specification: (1) "with the present invention, no mechanism is needed to turn a T-bar or to cause scissor-like prongs to move to the right and to the left, as in the prior art" ('697 Patent (Dkt. No. 54-1), Ex. C at col. 6:4-6); (2) "[t]he prior art . . . having a rotatable T-bar locking element . . . poses issues of complexity, insufficient sturdiness, and proneness to breakage in some respects." (Id. at col. 1:49-52)

These statements in the specification do not refer to a moveable pin, but rather to a potentially separate "T-bar" element that was rotatable in prior art. Moreover, at other points the specification describes "a locking element base . . . rotatably held . . . for allowing rotation of

the locking element," as well as a "locking element . . . shaped to rotatably fit."  (Id. at 2:47-52;

4:57-59)  These other references to rotatable elements belie the notion that Plaintiffs disclaimed

the notion of rotatability.  Accordingly, Defendant's proposed construction is rejected.

As to Plaintiffs' proposed construction, this Court sees no need to adopt it, as it

does not appear necessary to resolve any present dispute now that Defendant's proposed

construction is rejected.  The Court thus declines to construe the term "moveable pin."

For the same reasons, Defendant's' proposed construction of "selectively

moveable in a first direction and in an opposite second direction" is rejected.  The Court likewise

declines to construe this term.

### 2.    "Complementary"

The parties dispute the meaning of the word "complementary" as used in the

phrase "wedge lock elements includes a respective flat surface, complementary in shape to said

side walls, that extends in the same direction and lies against."  (Jt. Claim Construction Chart

(Dkt. No. 68) at 7)

Plaintiffs argue that "[t]he angular orientations of the flat surfaces on the wedge

lock elements are 'complementary[,]' i.e. matched, to the flat surfaces of the cavity side walls."

(Id.)  Defendant argues that claim construction is not "necessary at this time."  (Id.)

Plaintiffs argue that the claim language "physically mandates that both the side

walls and flat surfaces must have the same angular orientations[, which] is clear from the patent

itself, was corroborated by Noble's expert . . . and was conceded by ACCO's expert."  (Pltf.

Post-Hearing Br. (Dkt. No. 93) at 23-24)  Plaintiffs also maintain that this term "require[s]

intimate physical contact between the flat surfaces of the wedge lock elements and sidewalls,

which in turn means that they have the same angular orientations."  (Id. at 24)

Plaintiffs cite to no specific intrinsic evidence regarding "angular orientations" and, in any event, have not explained how introducing this additional language would assist a jury in understanding the meaning of "complementary," which is a non-technical and self-explanatory term. Indeed, Plaintiffs' construction would likely only add confusion for a lay juror. As to "intimate" contact, this concept does not appear in the '697 Patent, and is instead the product of Plaintiff's questioning of Defendant's expert and legal argument. (See Hearing Tr. (Dkt. No. 90) at 14-15, 176)

In sum, Plaintiffs have not demonstrated that the commonly-understood term "complementary" requires further explanation. Accordingly, this Court declines to construe this term.

### 3. **"Computer"**

The term "computer" modifies the term "security cavity" in the preamble of the '697 Patent. It is not clear from the parties' submissions whether there is a live dispute regarding the meaning of this term. In the Joint Claim Construction Chart, the parties have not designated this term as one that requires construction. (See Jt. Claim Construction Chart (Dkt. No. 68) at 5)

Plaintiffs do not mention this term in their opening brief. (Pltf. Opening Br. (Dkt. No. 71)) Defendant states, in its opening brief, that "[t]he only dispute here is whether the term 'computer' limits the 'computer security cavity' recited by claim 1 of Noble's '697 patent. . . . However, ACCO does not believe the dispute is material because it believes that only locks for computers will be at issue in this infringement action." (Def. Opening Br. (Dkt. No. 81) at 26) In their opposition brief, Plaintiffs "agree that the Court need not address this issue at the present time." (Pltf. Opp. Br. (Dkt. No. 76) at 26)

In their post-hearing brief, however, Plaintiffs argue that this "Court should decline ACCO's request to limit the scope of the '697 patent claims for use exclusively with a

'computer.'" (Pltf. Post-Hearing Br. (Dkt. No. 93) at 24)  Defendant responds that Plaintiffs

"explicitly dropped the term 'computer security cavity' in [their] responsive claim construction

brief. . . . It is incomprehensible why [Plaintiffs are] resurrecting this issue now. . . . [They]

should not be allowed to do so as that should have been addressed in the briefing before, not

after, the <u>Markman</u> hearing."  (Def. Post-Hearing Br. (Dkt. No. 96) at 17)

 Based on these submissions, the Court concludes that there is no present dispute

as to the meaning of the term "computer."  Accordingly, this Court declines to construe this

term.

 **B.** **<u>Disputed Terms in Defendant's Patents</u>**

  **1.** **<u>"Engagement Element"</u>**

 The parties dispute the meaning of "engagement element" as used in the '422

Patent and the '558 Patent.  (Jt. Claim Construction Chart (Dkt. No. 68) at 9-10)  Plaintiffs argue

that this term "is a 'means plus function' claim feature element," and accordingly must be

construed "relative to each of the forty (40) embodiments thereof . . . ."  (<u>Id.</u>)  Defendant

counters that this term should be given its "plain and ordinary meaning, including a structure that

can engage at least one protrusion in the lock interface member in any suitable manner."  (<u>Id.</u> at

9)

 The term "engagement element" does not include the word "means."

Accordingly, Plaintiffs must overcome the "rebuttable presumption . . . that [Section 112(f)] does

not apply" by "demonstrat[ing] that the claim term fails to 'recite sufficiently definite structure'

or else recites 'function without reciting sufficient structure for performing that function.'"

<u>Williamson</u>, 792 F.3d at 1348-49 (quoting <u>Watts</u>, 232 F.3d at 880).  Plaintiffs argue that

"engagement element has no structure that can be described in words to convey anything other

than its function, which is to engage a protrusion."  (Pltf. Opp. Br. (Dkt. No. 76) at 17)

Plaintiffs' argument is not persuasive.  As an initial matter, Plaintiffs cite no case law in which a similar term was construed as a means-plus-function term.  Plaintiffs also ignore the specification of the '422 Patent, which describes a structure that "can engage the at least one protrusion in the lock interface member in any suitable manner."  ('422 Patent (Dkt. No. 56-1) at col. 8:47-49)  Moreover, claim 1 of the '422 Patent describes "an engagement element extending from the body and adapted to be inserted into the aperture of the lock interface member, the engagement element being movable relative to the body while inserted in the aperture to engage the protrusion of the lock interface member."  (Id. at col. 28:19-24)  This language describes a sufficiently definite structure – namely, that the engagement element extends out from the body, can be inserted into the aperture of the lock interface member, and can engage the protrusion thereof.  And while Plaintiffs note the variety of engagement elements reflected in the '422 Patent's 40 embodiments, they can only point to two such embodiments that deviate from the aforementioned structure.  (Pltf. Post-Hearing Br. (Dkt. No. 93) at 10, 14)  These minor deviations are not sufficient to overcome the presumption against construing "engagement element" as a means-plus-function term.

Nanology Alpha LLC v. Witec Wissenschaftliche Instrumente Und Technologie GmbH, No. 16 Civ. 445 (RWS), 2017 WL 5905272 (E.D. Tex. Nov. 30, 2017) is instructive here.  In that case, the court found that "movement mechanism" was not a means-plus-function term.  Id. at *10-11.  The court noted that the "'movement mechanism' is 'attached to the cantilever to move the cantilever so that the tip is moved over the object.'"  Id. at *10.  The court then found that "the claims not only describe the structural elements, but also recite the interaction between the structural elements," and that "the specification includes examples of the claimed 'movement mechanism' that would be well understood as structure by a person of

ordinary skill in the art." Id. at *10-11. Similarly here, the '422 Patent describes how the engagement element interacts with the body, aperture, lock interface member, and protrusion, which collectively convey the structure of the engagement element.

Based on the testimony of defense expert Dr. Spak, however, Plaintiffs contend that "one would not know the 'structure' of the claim[ed] engagement element until years after the patent has issued, when a computer manufacturer creates the 'protrusions' in a lock interface member." (Pltf. Post-Hearing Br. (Dkt. No. 93) at 12 (citing Hearing Tr. (Dkt. No. 90) at 159:2-21)) The 40 embodiments cover a great number of types of protrusions, however, and this Court rejects the notion that the structure is somehow indefinite amid all of the intrinsic evidence demonstrating the structure of the engagement element.

Plaintiffs also cite the '422 Patent's prosecution history, arguing that "the Patent Examiner held (and ACCO accepted) that the 'engagement element' in claim 1 of the '422 patent is not 'cooperatively structured' with the 'protrusion,' which contradicts Dr. Spak's understanding of claim 1 of the '422 patent." (Id. at 13 (emphasis in original)) Plaintiffs appear to be referencing an "administrative matter of a requirement for a restriction," which the patent examiner effectuates "for the purposes of case management and control of filing and search fees." R2 Med. Sys., Inc. v. Katecho, Inc., 931 F. Supp. 1397, 1438 (N.D. Ill. 1996). "A restriction is not a rejection. . . . In fact, the court has not identified any precedent using prosecution history of the election of a species in order to restrict or otherwise interpret the scope of a patent claim." Id.

In their post-hearing brief, Plaintiffs argue – for the first time – that the '558 Patent, unlike the '422 Patent, does not include the term "protrusion." Plaintiffs use this fact to argue that "the word 'protrusion' in claim 1 of the '422 patent is not needed to define anything

[and] [t]herefore, 'protrusion' is not a positive claim element of claim 1 of the '422 patent." (Pltf. Post-Hearing Br. (Dkt. No. 93) at 13)  In response, Defendant notes that "[c]laim 1 of the '558 patent provides that 'a wedge-shaped engagement portion' of the engagement element engages 'part of the portable electronic device.'"  (Def. Post-Hearing Br. (Dkt. No. 96) at 20)

Plaintiffs have not demonstrated that the '558 Patent's claim language fails to define a structure.  Rather, like the '422 Patent, the '558 Patent defines the structure through its description of the engagement element, albeit one with a different element, which is "extending from the base and adapted to be inserted into an aperture of the portable electronic device, the engagement element including a wedge-shaped engagement portion configured to engage part of the portable electronic device when inserted into the aperture."  ('558 Patent (Dkt. No. 56-5) at col. 28:64-29:2)

Finally, Plaintiffs cite Section 2115 of the Manual of Patent Examination Procedure, which provides that "'the manner or method in which such machine is to be utilized is not germane to the issue of patentability of the machine itself.'"  (Pltf. Post-Hearing Br. (Dkt. No. 93) at 14 (quoting Dkt. No. 93-7))  Section 2115 is, however, "limited to claims directed to machinery which works upon an article or material in its intended use," such as "a core member for hair curlers," "a machine for making concrete beams," or a "taping machine."  (Dkt. No. 93-7)  Section 2115 therefore has no application here.

Accordingly, Plaintiffs' proposed construction is rejected.  Given this holding, there is no need to adopt Defendant's proposed construction which, in any event, does not elucidate the meaning of this term beyond the existing claim language.

### 2.   "Stabilizing Element"

The parties dispute the proper construction of "stabilizing element," as used in the '422 Patent and the '558 Patent.  Plaintiffs argue that – based on the prosecution history of the

'422 Patent – the "stabilizing element[] [must] inhibit rotation of the lock head."  (Pltf. Post-Hearing Br. (Dkt. No. 93) at 7)  Plaintiffs assert, however, that "Noble locks do not include a 'stabilizing element,'" and that accordingly Defendant's counterclaim for infringement of the '422 Patent fails.[3]  (Id. at 8) (arguing that the fact "that the Noble locks do not include a 'stabilizing element' . . . summarily disposes of the '422 ACCO patent[] in its entirety")

Defendant argues that "stabilizing element" should be given its "plain and ordinary meaning, including a structure that can stabilize the position of the locking head relative to the lock interface member in various forms."  (Def. Opening Br. (Dkt. No. 81) at 19)

As an initial matter, Plaintiffs cite no authority for their attempt to use claim construction as a vehicle for deciding infringement.  Moreover, their proposed construction – offered for the first time in a post-hearing brief – conflicts with the plain language of claim 1 of the '422 Patent, which provides that the stabilizing element is "fixed to the body to inhibit the head from being moved relative to the lock interface member while the engagement element is inserted in the aperture."  ('422 Patent (Dkt. No. 56-1) at col. 28:28-31)  Plaintiffs' proposed construction thus violates the Federal Circuit's direction that trial courts should "avoid the danger of reading limitations from the specification into the claim" itself.  Phillips, 415 F.3d at

---

[3]  In their pre-hearing briefs, Plaintiffs argue – as they did in connection with "engagement element" – that "stabilizing element" is a means-plus-function term, and they proffered proposed constructions as to each embodiment.  (Pltf. Opening Br. (Dkt. No. 71) at 20; Jt. Claim Construction Chart (Dkt. No. 68-2), Ex. B)  Plaintiffs appear to have abandoned this approach in their post-hearing brief.  (See Pltf. Post-Hearing Br. (Dkt. No. 93) at 9 n.1)  In any event, this Court rejects Plaintiffs' argument that "engagement element" or "stabilizing element" is a means-plus-function term.  Plaintiffs have not "demonstrated that the claim term fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"  Williamson, 792 F.3d at 1349 (alteration in original) (quoting Watts, 232 F.3d at 880).

1323.  Moreover, Plaintiffs' proposed construction would render superfluous the phrase "moved relative to the lock interface member" in claim 1.

Plaintiffs' arguments about the prosecution history are likewise not persuasive. Plaintiffs contend that Defendant "explained and argued to the Patent Examiner that the amended claim language means that:  'When positioned in the aperture, the stabilizing element inhibits the head from being moved (e.g., rotated or otherwise manipulated) relative to the lock interface member.'"  (Pltf. Post-Hearing Br. (Dkt. No. 93) at 7 (emphasis in Pltf. Post-Hearing Br.) (quoting Dkt. No. 93-2, Ex. B at 11))  But the phrase cited by Plaintiffs is explicitly couched as a non-exhaustive example, and accordingly does not constitute a disavowal.  Plantronics, Inc. v. Aliph, Inc., 724 F.3d 1343, 1350 (Fed. Cir. 2013) (citing Phillips, 415 F.3d at 1317) (holding that a prosecution disclaimer narrows a claim "when the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent").

For all these reasons, Plaintiffs' proposed construction of "stabilizing element" is rejected.  This Court sees no need to adopt Defendant's proposed construction, as it does not appear necessary to resolve any present dispute now that Plaintiffs' proposed construction has been rejected.  In any event, Defendant's proposed construction does not elucidate the meaning of "stabilizing element" beyond the existing claim language.

       **3.**      **"The Engagement Element Being Movable Relative to the Body While Inserted in the Aperture to Engage the Protrusion"**

The parties dispute the proper construction of the term "the engagement element being movable relative to the body while inserted in the aperture to engage the protrusion."  (Jt. Claim Construction Chart (Dkt. No. 68) at 12)  Plaintiffs argue that this term should be construed as either "while in the aperture, the 'engagement element' can be moved inside the aperture relative to the 'body' of the security apparatus," or "the engagement member is not fixed in

position relative to the body (of the apparatus)." (Id.) Defendant argues that claim construction of this term is not necessary. (Id.)

Plaintiffs have not explained (1) why their proposed construction is necessary; (2) how it would assist in clarifying the claim language; or (3) how it would resolve a dispute between the parties. Indeed, Plaintiffs merely state that they "agree[] that the engagement element . . . is moveable regardless of its location, which Noble proposes can be better articulated by stating [that] the engagement element is not fixed in position relative to the body of the lock head." (Pltf. Opp. Br. (Dkt. No. 76) at 19) Because Plaintiffs have not adequately explained why their construction is necessary, this Court declines to construe this term.

### 4.     "With the Engagement Element"

Claim 1 of the '422 Patent describes "a stabilizing element . . . to be inserted into the aperture of the lock interface member with the engagement element." The parties dispute the proper construction of the term "with the engagement element." (Jt. Claim Construction Chart (Dkt. No. 68) at 14-15) Plaintiffs argue that "with" means "together with (i.e. at the same time as)." (Id.) Defendant argues that this Court need not construe this term, or that the term should be given its plain and ordinary meaning. (Id.)

Plaintiffs' primary argument in favor of their construction is that "in most embodiments, the stabilizing element is inserted at the same time, i.e., with the engagement element," and that the disputed term "was inserted by [Defendant] via amendment to overcome [the patent examiner's] prior art rejection." (Pltf. Opening Br. (Dkt. No. 71) at 11 (emphasis in original)) Plaintiffs acknowledge, however, that "in some embodiments, the stabilizing element is inserted prior to the engagement element," while "[i]n other embodiments, it is inserted after the engagement element has been previously inserted." (Id.) (emphasis in original) Plaintiffs do

not explain how their proposed construction can be reconciled with embodiments in which the two elements are not inserted at the same time.

   As to the prosecution history, Defendant correctly notes that Plaintiffs "provide[] no evidence that [Defendant] narrowed the scope of 'with' during prosecution" or "used the word 'with' in [any] special way" in adding the phrase "with the engagement element." (Def. Opp. Br. (Dkt. No. 83) at 20-21) Plaintiffs' only response is that – absent their interpretation of events – "there is no explanation why this phrase was inserted into the claim." (Pltf. Opp. Br. (Dkt. No. 76) at 20) This argument does not begin to satisfy Plaintiffs' burden for proving a prosecution disclaimer, as it does not show that Defendant "unequivocally and unambiguously disavow[ed] a certain meaning to obtain a patent." <u>Plantronics</u>, 724 F.3d at 1350. In any event, the alleged "limitations from elsewhere in the specification will not be read in where," as here, "the claim term[] [is] clear." <u>Tate Access Floors</u>, 279 F.3d at 1371.

   In sum, this Court rejects Plaintiffs' proposed construction of "with the engagement element," and declines to construe this term.

   **5.**  <u>**"Protrusion"**</u>

   The parties dispute the proper construction of the term "protrusion." (Jt. Claim Construction Chart (Dkt. No. 68) at 9) Plaintiffs argue that "protrusion" means "'a <u>visually perceivable</u> structural element that protrudes from the interior wall of the [lock interface member's] aperture, in a direction toward the center of the aperture, which may include a "sloped surface" thereon.'"[4] (Pltf. Post-Hearing Br. (Dkt. No. 93) at 18 (emphasis in original)) Plaintiffs also argue "that the ACCO patents do not support the presence of any 'sloped surface'

---

[4] In their pre-hearing briefs, Plaintiffs argue that "protrusion" should be construed to mean "a structure that protrudes or bulges from a wall." (Jt. Claim Construction Chart (Dkt. No. 68) at 9)

other than in conjunction with a 'protrusion,'" and that "the word 'protrusion' appearing in claims of the ACCO patents denote[s] no more than an 'intended use' of the claimed 'security apparatus.'" (Id.)  Defendant counters that this Court should give "protrusion" its "[p]lain and ordinary meaning, including something that protrudes."  (Jt. Claim Construction Chart (Dkt. No. 68) at 9)

Plaintiffs' primary argument on this point is that "the only 'sloped surfaces' described in the ACCO patents are located on the 'protrusions," and that these patents do not "describe[] . . . 'sloping' or slanting the interior wall of the [lock interface member] toward the front opening, as in the Noble patents." (Pltf. Post-Hearing Br. (Dkt. No. 93) at 15)  At the April 16, 2019 Markman hearing, Plaintiffs presented models of locks and lock interface members, as well as physical locks, to demonstrate the difference between their respective designs.  (Pltf. Hearing Exs. 1-7)  Plaintiffs also offered expert testimony that Defendant's patents "mention a sloped surface but only in relation to a [protrusion]."  (Hearing Tr. (Dkt. No. 90) at 35:7-12)  In essence, Plaintiffs seek a construction of "protrusion" in Defendant's patents that would not claim the "slant[ed] interior wall" claimed in their own patents.

While the models introduced at the Markman hearing were of assistance in helping the Court understand lock technology, they do not support Plaintiffs' construction arguments here, because they do not constitute or describe intrinsic evidence of Defendant's patents.  Indeed, Plaintiffs' proposed construction is premised on their own patents, rather than on Defendant's patents.  (See Pltf. Post-Hearing Br. (Dkt. No. 93) at 17-18)  The only portion of Plaintiffs' argument that is premised on the intrinsic evidence of Defendant's patents relates to the narrow issue of where "sloped surfaces" appears in Defendant's patent specifications.  (Pltf. Post-Hearing Br. (Dkt. No. 93) at 15-16)

This Court is now addressing construction and not infringement, and Plaintiffs' patents are irrelevant extrinsic evidence in construing Defendant's patents, which by themselves are in no way unclear.  See Vitronics, 90 F.3d at 1583 (where "intrinsic evidence alone will resolve any ambiguity in a disputed claim term . . . it is improper to rely on extrinsic evidence"). It is evident from the claim language and the specification that a protrusion can take any number of shapes, "including bumps, plates, cylinders, pyramids, etc."  ('422 Patent (Dkt. No. 56-1) at col. 13:2-4)

Plaintiffs also argue that "a protrusion requires a reference structure or surface" (Pltf. Opp. Br. (Dkt. No. 76) at 15), and Plaintiffs' expert testified that a protrusion "is something that sticks out from something else. . . . You have to have a frame of reference."  (Hearing Tr. (Dkt. No. 90) at 32:20-24)  Plaintiffs' expert did not testify that "protrusion" is a term of art in the lock industry, however, and Plaintiffs have not addressed case law "hold[ing] that the proper construction of 'protrusion' is something that protrudes."  See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1309 (Fed. Cir. 2003).  Here, the specification and its many drawings demonstrate that "protrusion" is a non-technical term that can describe a number of shapes, and its meaning is sufficiently clear without resort to a "frame of reference."

Accordingly, Plaintiffs' proposed construction of "protrusion" is rejected, and this Court declines to construe this term.

Plaintiffs' remaining argument as to the term "protrusion" is that it is not a limitation, because it "is not a structural feature and does not help define in any way, shape, or manner the 'structure' of the engagement element. . . . [If] it can have literally any shape under the sun [then] 'protrusion' cannot define and does not characterize the structural shape of the engagement element."  (Pltf. Opening Br. (Dkt. No. 71) at 18)  Plaintiffs further argue that "[t]he

attempt to define the structure of engagement element by reciting that it is 'used' to engage a 'protrusion' fails factually and legally.  The 'protrusion' term is itself too vague and besides:  'It is trite to state that the patentability of apparatus claims must be shown in the structure claimed and not merely upon a use, function, or result thereof.'"  (Pltf. Opp. Br. (Dkt. No. 76) at 12 (quoting Catalina Mktg. Int'l v. Coolsavings.com, Inc., 289 F.3d 801, 809 (Fed. Cir. 2002)))

Defendant responds that "all the limitations in a claim must be considered meaningful."  (Def. Opp. Br. (Dkt. No. 83) at 13 (quoting ERBE Elektromedizin, 629 F.3d at 1286))

Plaintiffs have not addressed ERBE Elektromedizin.  Moreover, the complete quote in Catalina states that "preambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure."  Catalina, 289 F.3d at 809.  In any event, as previously stated in connection with the term "engagement element," it is evident from the claim language how the "protrusion" interacts with other elements of the defined structure.  Plaintiffs' assertion that "protrusion" lacks structure thus has no merit.[5]

The Court concludes that "protrusion" is a limitation of the '422 Patent.

### 6.    "Wedge-Shaped Engagement Portion"

The parties dispute the proper construction of the term "wedge-shaped engagement portion."  (Jt. Claim Construction Chart (Dkt. No. 68) at 18-20)  Plaintiffs argue that the word "wedge" means "[a] piece of material (as wood or metal) tapering to a thin edge used

---

[5]  Plaintiffs make the same argument with respect to "aperture," without providing any specifics. (Pltf. Opening Br. (Dkt. No. 71) at 18)  For the same reasons discussed in connection with "protrusion," this Court concludes that "aperture" is part of the defined structure in Claim 1 of the '422 Patent and '558 Patent, and thus is a claim limitation as to both patents.

for splitting wood or rocks, for raising heavy bodies, or by being driven into a space between



objects for tightening, with a shape as shown to the right:   wedge 1          ."[6]

(Pltf. Post-Hearing Br. (Dkt. No. 93) at 21)

Defendant argues that this Court should give "wedge-shaped engagement portion"

its "[p]lain and ordinary meaning, including a part of an engagement element shaped like a

wedge."  (Jt. Claim Construction Chart (Dkt. No. 68) at 18)

Plaintiffs' proposed construction is not workable because it is simply the

dictionary definition of the word "wedge."  Inserting the dictionary definition in place of

"wedge" results in a nonsensical construction that would confuse, rather than assist, a lay juror in

understanding the meaning of "wedge-shaped engagement portion."  "Wedge-shaped" is a non-

technical term, and "there is nothing in the specification to suggest that 'wedge-shaped' should

be given anything other than its ordinary meaning."  Verbovsky v. Goodbaby Int'l Holdings Ltd.,

No. 16 Civ. 2382 (PAG), 2017 WL 3840416, at *7 (N.D. Ohio Sept. 1, 2017).  It is likewise

obvious that Plaintiffs' arguments do not derive from the intrinsic evidence, because Plaintiffs'

arguments are predicated entirely on what is not in the intrinsic evidence, as opposed to what is.

---

[6]  In their pre-hearing briefs, Plaintiffs advocated construing the entire term "wedge-shaped engagement portion" (see Pltf. Opp. Br. (Dkt. No. 71) at 21-25), but now appear to have abandoned that proposal in favor of only construing the word "wedge."

(See Pltf. Post-Hearing Br. (Dkt. No. 93) at 19) (complaining that "neither 'wedge' nor 'wedge-shaped' appear[] anywhere in the original specifications and drawings of the ACCO patents")

To the extent that Plaintiffs' arguments about "wedge-shaped engagement portion" turn on their own patents, as explained above in connection with "protrusion," those arguments are irrelevant in determining what this term means in Defendant's patents.  See Boss Control, 410 F.3d at 1377.  Likewise irrelevant at claim construction is Plaintiffs' argument that Defendant "injected 'wedge shape' into its 2018 vintage patent claims, so it can hammer a jury with [a] sound bite."  (Pltf. Post-Hearing Br. (Dkt. No. 93) at 20)

Plaintiffs contend that their expert "testified that he does not recognize or discern any 'wedge-shaped engagement portion' in the ACCO patents."  (Id. at 19 (citing Hearing Tr. (Dkt. No. 90) at 50:7-24; 54:21-23; 56:23-57:4))  The expert admitted during the Markman hearing, however, that he "did not provide any opinions regarding the meaning[] of the term 'wedge-shaped engagement portion' used in the claims of the ACCO '558 [Patent]" in his pre-hearing declarations.  (Hearing Tr. (Dkt. No. 90) at 86:15-18)

In sum, Plaintiffs' proposed construction for "wedge-shaped engagement portion" finds no support in the intrinsic evidence.  Defendant has provided no affirmative support for its proposed construction.  Accordingly, this Court declines to construe "wedge-shaped engagement portion."

### 7.    "Lock Interface Member" and          "Portable Electronic Device"

Claim 17 of the '422 Patent references a "lock interface member . . . associated with a portable electronic device."  The parties dispute whether "lock interface member" and "portable electronic device" are claim limitations.  (Jt. Claim Construction Chart (Dkt. No. 68) at

15-16)  Plaintiffs contend that these terms are "not claim limitations," while Defendant contends that they are.  (Id. at 15)

    Defendant asserts that "[i]t is black letter patent law that 'all the limitations in a claim must be considered meaningful'" (Def. Opp. Br. (Dkt. No. 83) at 13 (quoting ERBE Elektromedizin, 629 F.3d at 1286)), while Plaintiffs argue that these terms are merely "a statement of 'intended use' and not a claim limitation.  The patentability of an apparatus claim 'depends on the claimed structure, not on the use or purpose of that structure.'"  (Pltf. Opening Br. (Dkt. No. 71) at 18-19 (quoting Catalina, 289 F.3d at 809))  In Plaintiffs' post-hearing brief, they argue that "[c]laim 17 adds nothing to claim 1 because its recitation that the (unclaimed) 'lock interface member' is 'associated with a portable electronic device' does not further define or add anything to the structure of the 'security apparatus' of claim 1.  The recitation that the [lock interface member] is 'associated' with a 'portable electronic device' is meaningless."  (Pltf. Post-Hearing Br. (Dkt. No. 93) at 21-22)

    Plaintiffs' conclusory argument that these terms are "meaningless" does not address why Catalina should apply beyond a preamble, nor does it rebut well established case law that "all the limitations in a claim must be considered meaningful."  ERBE Elektromedizin, 629 F.3d at 1286 (quoting Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1562 (Fed. Cir. 1991)).

    The Court concludes that the terms "lock interface member" and "portable electronic device" in Claim 17 of the '422 Patent are claim limitations.

## CONCLUSION

    For the reasons stated above, this Court declines to construe the disputed terms of the '697 Patent, the '422 Patent, and the '558 Patent.  This Court further concludes that the terms

"protrusion," "lock interface member," and "portable electronic device" are claim limitations of the '422 Patent, and that "aperture" is a claim limitation of the '422 Patent and the '558 Patent.

A telephonic conference in this matter will take place on **January 14, 2022 at 11:00 a.m**.[7]

Dated: New York, New York
        January 11, 2022

SO ORDERED.

_Pauls Gardephe_

Paul G. Gardephe
United States District Judge

---

[7] The parties are directed to dial 888-363-4749 to participate, and to enter the access code 6212642. The press and public may obtain access to the telephone conference by dialing the same number and using the same access code. The Court is holding multiple telephone conferences on this date. The parties should call in at the scheduled time and wait on the line for their case to be called. At that time, the Court will un-mute the parties' lines. The day before the conference, the parties will email Michael_Ruocco@nysd.uscourts.gov and GardepheNYSDChambers@nysd.uscourts.gov with the phone numbers that they will be using to dial into the conference so that the Court knows which numbers to un-mute. The email should include the case name and case number in the subject line.