UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_9/19/2025_

NOBLE SECURITY, INC. and MEIR AVGANIM,

Plaintiffs and Counter-Defendants,

-against-

ACCO BRANDS CORPORATION,

Defendant and Counter-Plaintiff.

16-CV-09129 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiffs Noble Security, Inc. ("Noble") and Meir Avganim bring this action against Defendant ACCO Brands Corporation ("ACCO") for infringement of Plaintiffs' U.S. Patent No. 9,549,476 (the "'476 Patent") and U.S. Patent No. 9,624,697 (the "'697 Patent") (together the "Noble Patents"). Dkt. No. 54. Currently before the Court are Parties' cross motions for summary judgment. *See* Dkt. Nos. 145 & 148. The Court referred these motions to Magistrate Judge Gabriel W. Gorenstein for a Report & Recommendation. Dkt. No. 174. On March 28, 2025, Judge Gorenstein issued a Report & Recommendation, recommending that Plaintiffs' motion for summary judgment be granted in part and denied in part and that Defendant's motion for summary judgment be granted in part and denied in part. Dkt. No. 209 (the "R&R"). Both parties filed objections to the R&R and oppositions to one another's objections. Dkt. Nos. 210–214. For the reasons discussed below, the R&R is ADOPTED IN FULL.

## FACTS & PROCEDURAL HISTORY

The Court assumes familiarity with the facts and procedural history of this action and incorporates by reference the background section of the R&R, which accurately describes the

1

history of this matter.  *See* R&R at 3–15.  The following briefly summarizes the relevant details, which are assumed true solely for purposes of this Opinion.

Beginning in the early 1990s, many desktops, laptops, tablets, and other computing devices featured a rectangular slot on their outer bodies, called a Kensington[1] slot, intended to allow a user to secure the device to a fixed object with a cable or other lock.  Dkt. No. 54 (Third Amended Complaint or TAC) ¶ 7.  Suppliers of computer locks created and sold locks designed for the Kensington slot.  *Id.* ¶ 8.  At some point in the 2000s, Dell Technologies Inc. ("Dell") began looking for a security solution for its thinner laptops and devices, turning to engineers at Noble and ACCO for a new slot and lock system.  Dkt. No. 164 (Def. Response to Pl. R. 56.1 Statement) ¶¶ 71, 73.

In the mid- to late-2000s, Dell adopted a trapezoid-shaped slot (the "Wedge Slot") that Avganim invented either alone or in collaboration with Dell.  Dkt. No. 161-1 (Pl. Response to Def. R. 56.1 Statement) ¶¶ 9, 19.  Noble sells a specialty lock compatible with the Wedge Slot (the "Noble Lock").  TAC ¶ 16.  Avganim holds Patent '697, which covers the Noble Lock and which Avganim leases to Noble, and Patent '476, which seemingly covers the Wedge Slot.  *Id.* ¶¶ 22, 25.  ACCO also developed and sells locks compatible with the Wedge Slot (the "N17 Locks").  Dkt. No. 56 (Answer) ¶ 36.  ACCO's U.S. Patent No.  8,842,422 (the "'422 Patent") covers its N17 Locks.  Answer ¶¶ 9–15.

Plaintiffs began this lawsuit by filing a complaint on November 23, 2016.  Dkt. No. 1.  Plaintiffs then twice amended the complaint, culminating in the Third Amended Complaint filed on October 19, 2018.  *See* Dkt. No. 54.  Plaintiffs alleged infringement of the '476 and '697 Patents and tortious interference with existing and potential business relationships.  *Id.* ¶¶ 58–71.

---

[1] Kensington is a division of Defendant ACCO.  TAC ¶ 9.

The Court later struck the tortious interference claim. Dkt. No. 63. Defendant counterclaimed alleging, *inter alia*, infringement of the '422 patent. Answer at 26.

On April 29, 2024, the parties cross-moved for summary judgment. Dkt. Nos. 145 & 148. Plaintiffs sought an order granting summary judgment in their favor and finding that (1) Defendant's sale of the N17 Locks infringes claim 1 of the '697 Patent and claims 15 and 16 of the '476 Patent, and the infringements were willful; (2) portions of Defendant's '422 patent are invalid as over the prior art; and (3) Avganim cannot be held personally liable for Noble's sales of the Noble Lock. *See* Dkt. No. 145. Defendant sought an order granting summary judgment in its favor and finding that (1) Defendant does not infringe the '697 patent because Defendant does not sell a security cavity; (2) Defendant cannot infringe the Noble Patents because Plaintiffs granted an implied license to third-parties to use both patents; (3) Plaintiffs are not entitled to worldwide damages; and (4) Defendant did not willfully infringe the Noble Patents. *See* Dkt. No. 150. The Court referred the summary judgment motions to Judge Gorenstein for a report and recommendation. Dkt. No. 174.

On March 28, 2025, Judge Gorenstein issued the R&R, recommending that the Court grant in part and deny in part both motions for summary judgment. Dkt. No. 209. Both parties filed objections to the R&R, Dkt. Nos. 210 & 211, and opposed one another's objections, Dkt. Nos. 212 & 214.

## DISCUSSION

## I.    LEGAL STANDARDS

### A.  Standard of Review

When reviewing a report and recommendation by a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When specific objections are lodged, "[t]he district

judge must determine *de novo*" those portions of the report and recommendation.  Fed. R. Civ. P.

72(b)(3).  However, "[w]here the objecting party makes only conclusory or general objections, or

simply reiterates the original arguments, the court will review the report and recommendation

strictly for clear error."  *Avila v. Acacia Network, Inc.*, Nos. 23-CV-07834 (PAE), 23-CV-10260

(PAE), 2025 WL 2233987, at *2 (S.D.N.Y. Aug. 6, 2025) (citing *Kirk v. Burge*, 646 F. Supp. 2d

534, 538 (S.D.N.Y. 2009) (collecting cases) and *Dickerson v. Conway*, No. 08-CV-8024 (PAE),

2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013)); *but see Bhagat v. Shah*, No. 24-CV-01424

(VEC), 2025 WL 2396668, at *2 (S.D.N.Y. Aug. 18, 2025) (observing the Second Circuit has

recently "expressed skepticism" regarding district courts' clear error review of objections that

seek to relitigate issues fully argued in the briefing before the magistrate judge).  Similarly, a

court will review portions of the report and recommendation to which no timely objections have

been made for clear error.  *See, e.g.*, *Gershowitz v. Griv*, No. 24-CV-01915 (PAE) (OTW), 2025

WL 2170773, at *2 (S.D.N.Y. July 31, 2025).

### B.  Standard on a Motion for Summary Judgment Under Rule 56

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant

summary judgment when "the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine

issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact is

material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun &

Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal references omitted).  In determining

whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be

believed," and a court must draw "all justifiable inferences" in favor of the nonmovant.

*Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)).

4

Once the movant has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [the nonmovant's] favor." *Anderson*, 477 U.S. at 256. Reliance upon "conclusory statements" or "mere allegations" is not sufficient to defeat summary judgment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal references omitted).

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (internal references omitted). And "[w]here it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting G*allo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## II.    THE R&R IS ADOPTED IN FULL

### A. Defendant's Motion for Summary Judgment that It Cannot Directly Infringe the '697 Patent is Denied

Defendant first argues that the '697 Patent covering the Noble Lock also covers a security cavity or slot such that Defendant could infringe the '697 Patent only by selling both the lock *and* the slot. Dkt. No. 211 (Def. Obj. to R&R) at 2. As evidence that the '697 Patent includes the slot, Defendant cites the '697 Patent's preamble, which references and describes a "security

cavity" and its "sidewalls." *Id.* at 2–3. Defendant also relies on the '697 Patent's prosecution history, which Defendant contends proves that the '697 Patent's design includes a slot. *Id.* at 3–4. Because the '697 Patent incorporates a security cavity or slot and Defendant does not sell a security cavity or slot, Defendant argues, it cannot directly infringe the '697 Patent. The R&R addressed and rejected precisely the same arguments Defendant now raises to the Court. Accordingly, the Court reviews for clear error—although the Court would reach the same conclusion reviewing *de novo*.

As the R&R aptly explains, the preamble's discussion of a "security cavity" and the cavity's "sidewalls" describes the environment in which the '697 Patent's invention is designed to function. R&R at 23–24 (citing *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1374 (Fed. Cir. 2022)). Both the preamble and the claims also reference the shape of the cavity to clarify the shape and configuration of the invention itself. R&R at 24. Hence, although a cavity of a particular shape may be the environment in which the invention (here, the lock) functions, the cavity is not a structural component of the invention itself.

*Advanced Software* is on all fours with this case. *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368 (Fed. Cir. 2011). There, the plaintiff held a patent on check-security technology that decrypted information that was encrypted and printed on the surface of checks. *Id.* at 1371–72. The patent's preamble described the patent as "[a] process for validating a negotiable financial instrument," *i.e.*, a check, on which information "is encrypted . . . to generate a control code which is printed on the financial instrument." *Id.* at 1373. Construing this language, the Federal Circuit determined that an infringer would not need to encrypt or print checks to infringe the patent because the preamble (and its language concerning encrypted information printed on checks) simply described the "environment in which an accused infringer

must act or . . . capabilities that an accused device must have." *Id.* at 1374. So too here. The '697 Patent's preamble simply describes the environment in which the patented invention—the lock—operates. Much like one could infringe the *Advanced Software* patent without encrypting or printing checks, one could infringe the '697 Patent without making or selling a security cavity, so long as the infringing lock is one that is designed to work with a cavity or slot as described in the '697 Patent. *Id.*

Resisting that conclusion, Defendant states that a lock without a cavity does not practice the claim elements, so Defendant's selling a lock cannot constitute direct infringement of the '697 Patent. Def. Obj. to R&R at 4–5. Once again, even assuming a lock would not infringe the patent unless combined with a cavity, *Advanced Software* refutes Defendant's argument. The Federal Circuit in *Advanced Software* commented that a competing check decryption software would "infringe the method . . . only by validating checks that have been encrypted and printed in accordance with steps described in the preamble." 641 F.3d at 1374. Although decryption software would not infringe the patent unless combined with an encrypted and printed check, the Federal Circuit nevertheless determined that the defendant in *Advanced Software* (which sold a check decryption software used to validate checks) could directly infringe the patent even if it did not itself print checks with encrypted information. *See id.* at 1372–3 (reversing the district court's grant of summary judgment in favor of the defendant because the district court erroneously determined that the defendant could not infringe the patent if the defendant did not encrypt or print checks). The same reasoning applies to this case. Even assuming for purposes of the motion that a lock could only infringe the '697 Patent when combined with the cavity, it would still be possible for Defendant to directly infringe the '697 Patent without also selling the corresponding security cavity or slot.

Defendant's arguments about the '697 Patent's prosecution history do not alter this conclusion. Def. Obj. to R&R at 3–4. The Court agrees with the R&R on this point and adopts its reasoning. As the R&R noted, the '697 Patent's prosecution history shows that existing references to the cavity were expanded to clarify the shape and configuration of the first and second wedge lock elements. R&R at 25–27. Nowhere does the prosecution history somehow inject the cavity as a structural component of the patented invention itself.

### B. Defendant's Motion for Summary Judgment That it Cannot Infringe the Noble Patent Is Granted with Respect to the '476 Patent Only

Defendant sought summary judgment in its favor on infringement of the Noble Patents on the ground that Plaintiffs granted an implied license to Dell to use the Wedge Slot. Dkt. No. 150 (Def. MSJ Br.) at 15–16. As a matter of law, Defendant could be *indirectly* liable to Plaintiffs for patent infringement only if Dell was *directly* liable to Plaintiffs for patent infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920 (2014) ("[T]here can be no indirect infringement without direct infringement.") (citations omitted). Accordingly, if Dell could not infringe the Noble Patents due to an implied license, Defendant could not indirectly infringe. Def MSJ Br. at 16. The R&R recommended Defendant's argument be adopted only as to the '476 Patent, because Plaintiffs granted an implied license to Dell to use the slot covered by the '476 Patent. R&R at 36. Plaintiffs raise the same objections to this recommendation that it addressed to Judge Gorenstein. *Compare* Dkt. No. 210 (Pl. Obj. to R&R) at 5–15; *with* Dkt. No. 161 (Pl. MSJ Opp.) at 26–33. Nevertheless, even reviewing the R&R's conclusion *de novo*, the Court adopts the recommendation and holds that Plaintiffs' claim of indirect infringement of the '476 Patent fails because Plaintiffs granted an implied license.

A patentee may waive its right "to exclude others from making, using, or selling a patented invention." *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003).

8

Such waiver may be express or implied. *Id.* An implied license may "arise by acquiescence, by conduct, by equitable estoppel (estoppel in pais), or by legal estoppel." *Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). Regardless of how an implied license arises, however, two elements must be met for an implied license to exist. *Anton/Bauer, Inc.*, 329 F.3d at 1350. First, the invention must have "no noninfringing uses." *Id.* Second, the circumstances must "plainly indicate that the grant of a license should be inferred." *Id.* To identify an implied license, a court must look for language or conduct by the owner of a patent "from which [another] may properly infer that the owner consents to his [or her] use of the patent in making or using it, or selling it, upon which the other acts, [which] constitutes a license . . . . ." *De Forest Radio Telephone & Telegraph Co. v. United States*, 273 U.S. 236, 241 (1927).

The R&R properly determined that the first element is satisfied because the Wedge Slot covered by the '476 Patent had no noninfringing uses. R&R at 28. Plaintiff Avganim testified in a deposition that "if I have a slot, *any product* goes into it for the same purpose, it's one infringement." Def. MSJ Br. at 18. Plaintiffs' briefing likewise offers no argument that the patented slot has a noninfringing use. Supported by the evidence and uncontroverted by Plaintiffs, the Court perceives no error in the R&R's conclusion that the first element is met in this case.

Addressing the second element, Judge Gorenstein determined that Plaintiffs had consented to Dell's use of the Wedge Slot in its products. R&R at 29. As the R&R explained, Plaintiffs' engineer, Brian Robinson, sent the schematics of the Wedge Slot to Dell, knowing that "they would be used to implement . . . the slot into its machines." Dkt. No. 161-1(Pl. Response to Def. R. 56.1 Statement) ¶ 17; *see De Forest*, 273 U.S. at 241 (concluding an implied license existed and highlighting that patentee had "furnish[ed] the needed information and drawings and

blueprints for . . . manufacture" of the patented invention).  Plaintiffs placed no limitations on

Dell's use of the slots.  Pl. Response to Def. R. 56.1 Statement ¶ 18; *see Anton/Bauer, Inc.*, 329

F.3d at 1351 (highlighting that patentee did not place restrictions on the item it sold in

concluding that an implied license existed).  And although Plaintiffs were aware Dell used the

Wedge Slot in some of its devices, Plaintiffs took no steps to challenge Dell's commercial use.

This course of conduct between Plaintiffs and Dell confirms that Plaintiffs consented, at least

implicitly, to Dell's use of the slot and thereby granted an implied license. Because Plaintiffs

granted Dell an implied license, Defendant was not capable of infringing the patent.

      In addition, Plaintiffs received "valuable consideration" from Dell's use of the slot in its

products.  *See Wang Lab'ys*, 103 F.3d at 1582 (highlighting that patentee prompted a defendant

to use and manufacture its patented invention and received "valuable consideration" therefrom as

evidence of patentee's having granted an implied license).  Plaintiff Avganim testified in his

deposition that he put no restrictions on Dell's use of the slot because his "interest was [Dell]

will use it in order [for Noble] to sell locks that will fit to the slot."  Dkt. No. 155-1, Ex. #4 at

226:4–7.  Record evidence also suggests that Plaintiffs devoted significant time and resources

towards encouraging device manufacturers, including Dell, to adopt the Wedge Slot.  *See, e.g.*,

Dkt. No. 210-3, Ex. 3 (showing the competition between Plaintiff Noble and Kensington, a

subsidiary of Defendant ACCO, to entice manufacturers to adopt competing slot designs).  By

encouraging entities such as Dell to use the Wedge Slot, Plaintiffs created and broadened the

market for its Noble Lock, which Plaintiffs could then sell to Dell customers with wedge-slotted

devices. *See Wang Lab'ys*, 103 F.3d at 1581 ("[The patentee] received exactly the

remuneration it desired:  [The patentee]'s design is an industry standard, and the benefits of a

large market and lower prices for SIMMs redound to this day."); *id.* at 1579 ("[B]y agreeing to

manufacture and sell SIMMs, [the alleged infringer] contributed to a 'high volume supply and downward pressure on the price' of SIMMs, which benefitted [the patentee] as a purchaser of SIMMS . . . .").

Plaintiffs' objections to the R&R's analysis are unavailing. First, they object to the R&R's conclusion that they did not dispute that the patented slot had no infringing uses. Pl. Obj. to R&R at 7. As evidence, however, Plaintiffs excerpt a portion of their brief opposing summary judgment that does not argue the patented slot has a noninfringing use. *Id.* And Plaintiffs' objection to the R&R is devoid of any argument that the patented slot has a noninfringing use.

Second, Plaintiffs rely heavily on Exhibits A and 8 (attached to Dkt. No. 210 at Exs. 2 & 3, respectively), which Plaintiffs contend "reveal that Plaintiffs revoked any purported 'license' . . . to Dell to freely use the [Wedge] Slot," Pl. Obj. to R&R at 8, or that Dell never understood there to be an implied license. But these exhibits cannot bear the weight Plaintiffs assign them. Exhibit A is an email warning Dell that "Dell might consider it important to investigate whether its offering the alleged infringing *product* [the competing ACCO lock] to Dell customers on the Dell website might create future conflict between Dell and our client Noble." *Id.*, Ex. 2 (emphasis added). The email plainly refers to the "Noble Security Wedge Lock," in both the re: line and in the text, and not the Wedge Slot. *Id.* As a result, it says nothing about the existence of an implied license concerning the Wedge Slot. Exhibit 8 likewise does not support the claim that Dell perceived any restrictions on its use of the Wedge Slot. *See, e.g.*, *id.*, Ex. 3 at 79 (conversation between Dell employees about whether to rename the Wedge Slot the "Dell Lock Slot" so "it sounds more like Dell"). Plaintiffs highlight an email from an employee of Defendant, sent after the start of this litigation, stating that it would keep "Dell out of [l]egal

issues." *Id.* at 89.  But that also says nothing, one way or the other, about whether there was an implied license between Plaintiff and Dell concerning the latter's use of Wedge Slot.

Third, Plaintiffs contend that Exhibit 8 shows that Defendant had no lock prior to mid-2016 fitting the Wedge Slot, that "Dell never perceived that it was misled by [Plaintiffs]," and that Dell was not "entitled to deem itself as having been granted an implied license relative to obtaining locks for the Noble slot."  Pl. Obj. to R&R at 10.  These contentions are largely irrelevant.  Whether Defendant had a lock compatible with the Wedge Slot prior to mid-2016 and whether Dell felt it was misled by Plaintiffs does not bear on whether Plaintiffs granted Dell an implied license to use the Wedge Slot.  And Plaintiffs' comment about Dell's subjective belief in the existence of an implied license is both unsupported by citations to the record and legally irrelevant, as the R&R explained.  *See, e.g.*, R&R at 33 ("[W]hat matters is whether the circumstances are such that a license may be 'inferred' from the circumstances of the parties' conduct.") (quoting *Anton/Bauer, Inc.*, 329 F.3d at 1350).

Fourth, Plaintiffs object that it was improper for the R&R "to impute to Noble Dell's sales of the Noble Slot Dell laptops."  Pl. Obj. to R&R at 13.  Plaintiffs further argue the R&R improperly analogized the present case to *Anton/Bauer, Inc. Id.*  This objection fails as well, because the R&R did not impute any sales to Plaintiffs.  To the contrary, the R&R explained, consistent with precedent, that no sales are required for an implied license to exist.  R&R at 31; *see, e.g.*, *De Forest*, 273 U.S. at 239, 240 (determining an implied license existed even though no sale had occurred).  Moreover, the R&R did not rely on *Anton/Bauer, Inc.* in determining that Plaintiffs had granted Dell an implied license to use their patented slot.  The R&R only analyzed *Anton/Bauer, Inc.* in response to Plaintiff's affirmative argument seeking to distinguish the case.

*See* R&R at 30 (addressing Plaintiffs' argument "regarding how this case differs from a Federal Circuit case, *Anton/Bauer, Inc.*").

Fifth, Plaintiffs allege no implied license could exist because Plaintiffs and Dell never discussed an implied license. Pl. Obj. to R&R at 6–7. Precedent is clear that conduct alone can suffice to create an implied license. *De Forest*, 273 U.S. at 241 (explaining that language *or* conduct can give rise to an implied license).

Sixth and last, Plaintiffs raise a policy argument that adopting the R&R's recommendation would create an adverse rule that an implied waiver exists every time an inventor shares an invention without specifying restrictions. Pl. Obj. to R&R at 14–15. This argument ignores crucial aspects of this case, namely that Plaintiffs shared the Wedge Slot design precisely so that Dell would use it on its devices, that Plaintiffs did not place restrictions on Dell's use of the design because they wanted Dell to adopt the Wedge Slot for as many of its products as possible, and that Plaintiffs wanted Dell to adopt the Wedge Slot to create a market for the Noble Locks. The Federal Circuit has already determined that an implied waivers exist in similar contexts. *See Wang Laby's,* 103 F.3d at 1582 (determining an implied license existed after patentee shared schematics of a design so that defendant would use the design and patentee proceeded to derive considerable benefits from the defendant's adoption and use of the design). The R&R's recommendation does not break new ground, and is rooted in the precedent and the particular facts of this case.

### C. Defendant's Motion for Summary Judgment on Worldwide Damages Is Denied

Defendant moved for summary judgment that Plaintiffs are not entitled to worldwide damages. Def. MSJ Br. at 21. The R&R recommended denying that aspect of Defendant's motion as either merely reciting an accepted principle of law (Plaintiffs may not recover for sales deemed "foreign" under the applicable patent statute), R&R at 38–39, or as failing to show that

none of the N17 Locks warehoused, shipped, and delivered abroad were "sold" in the United

States for purposes of the statute, *id.* at 40.  The Court reviews Defendant's objections to this

portion of the R&R *de novo*.

A genuine issue of material fact precludes summary judgment "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the movant establishes no genuine issue as to any

material fact exists, the burden shifts to the nonmovant to "come forward with 'specific facts

showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at

587 (quoting Fed. R. Civ. P. 56(e)).

Section 271(a) of the patent statute provides that "whoever without authority makes, uses,

offers to sell, or sells any patented invention, *within the United States* or *imports into the United*

*States* any patented invention during the term of the patent therefor, infringes the patent."  35

U.S.C. § 271(a) (emphasis added).  Accordingly, it is "the general rule under United States

patent law that no infringement occurs when a patented product is made and sold in another

country."  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007).  Nevertheless, when

products are "manufactured, shipped, and delivered to buyers" abroad, a court must still consider

if the products "were *sold within* the United States for purposes of § 271(a)."  *Halo Elecs., Inc. v.*

*Pulse Elecs., Inc.*, 831 F.3d 1369, 1377 (Fed. Cir. 2016); *Carnegie Mellon Univ. v. Marvell Tech.*

*Grp., Ltd.*, 807 F.3d 1283, 1288 (Fed Cir. 2015).

Objecting to the R&R, Defendant argues that after Defendant proved that locks

manufactured, shipped, warehoused, and delivered abroad never passed through the United

States, the burden shifted to Plaintiffs to identify evidence of Defendant's domestic activities "so

substantial as to 'transform [Defendant's] extraterritorial activities into a sale within the United

States.'" Def. Obj. to R&R at 9 (quoting *Halo Elecs., Inc.*, 831 F.3d at 1378).  But Defendant

did not introduce sufficient evidence that locks manufactured, shipped, warehoused, and

delivered abroad nevertheless were not "sold" within the United States within the meaning of the

patent law.  *See Carnegie Mellon Univ.*, 807 F.3d at 1305–06 (remanding to determine if chips

made and delivered abroad, and never imported into the United States, "can fairly be said to have

been sold" in the United States).  Defendant relied on the deposition of its Vice President of

Global Marketing and Sales Gwen Hsu to show that locks warehoused and delivered abroad

were not "sold" in the United States.  *See* Def. MSJ Br. at 22 ( "Q. If an order comes in from the

European marketplace for an N17 lock, do you see that in your records?  A. No. . . . Q. Do you

see any orders that come in? . . . [A.] No.").  As the R&R correctly explained, however, Ms.

Hsu's deposition testimony is insufficient to show no genuine issue of material fact existed on

whether a "substantial level of sales activity," *Carnegie Mellon Univ.*, 807 F.3d at 1309–10, took

place in the United States, R&R at 40.  The deposition related only to sales in Europe, not *all*

sales to *all* foreign customers.  Furthermore, it is unclear what probative value this evidence has

because Ms. Hsu responded "No" when asked if she sees *any* orders that come in, and the

deposition did not appear to exhaust all possible facts that could establish sufficient U.S.

involvement in foreign sales.

Reinforcing that a genuine dispute of material facts exists, Plaintiffs highlight that

Defendant's document productions did not indicate a foreign-based entity conducting sales.  Dkt.

No. 212, Pl. Resp. to Def. Obj. at 7–8.  Defendant's global sales infrastructure is based in the

United States, and sales also occur through Defendant's website.  *Id.* at 2, 9.  Ms. Hsu herself

testified that Defendant's operation within the United States is involved with sales made to

entities outside the United States.  *See* Dkt. No. 151-20, Hsu Deposition Excerpt 1 at 94:17–95:1.

15

As a result, the Court lacks sufficient evidence to determine—even for locks produced, shipped, and received abroad— that *none* of those locks were "sold" within the United States for purposes of damages under the patent law, or to conclude that no rational and properly-instructed jury could find otherwise.

Defendant objects that the R&R's analysis conflicts with the Federal Circuit's decision in *Halo Electronics*. Dkt. No. 211 at 10 (citing *Halo Elecs., Inc.*, 831 F.3d at 1373, 1378). The Court disagrees. In *Halo Electronics*, the defendant introduced uncontroverted evidence that it maintained sales offices abroad that received and processed purchase orders for all products delivered abroad. 831 F.3d at 1374. The evidence in *Halo Electronics* also established that, for products delivered abroad, the contract terms were fully determined abroad and payments occurred abroad as well. *Id.* Hence, the Federal Circuit held that "when substantial activities of a sales transaction, *including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract*, occur entirely outside the United States, pricing and contracting negotiations in the United States alone do not constitute or transform those extraterritorial activities into a sale within the United States." *Id.* at 1378 (emphasis added). Here, however, Defendant has not identified sufficient evidence about where it receives purchase orders, where a contract for sale encompassing all essential terms is formed, or where it receives payments. As a result, the holding of *Halo Electronics* does not dictate the outcome of this motion.

Because Defendant has not met its burden of establishing that no genuine dispute of material fact exists or that no rational jury could award damages on its global sales, the Court

adopts this portion of the R&R in full and denies Defendant's motion for summary judgment on

the issue of worldwide damages.[2]

### D. Plaintiffs' Motion for Summary Judgment Is Denied and Defendant's Motion for Summary Judgment Is Granted on the Issue of Whether Defendant *Willfully* Infringed the Noble Patents

In their respective summary judgment motions, Plaintiffs sought an order that Defendant

willfully violated the Noble Patents while Defendant sought an order that it *did not* willfully

violate the Noble Patents.  Dkt. No. 145-1, Pl. MSJ Br. at 1; Dkt. No. 154, Def. MSJ Br. at 23–

26.  The R&R highlighted that Defendant had invoked multiple, good faith affirmative defenses,

which it viewed as precluding a determination that Defendant willfully infringed the Noble

Patents.  R&R at 44.  The R&R also noted that Plaintiffs had introduced no evidence that

Defendant willfully infringed the Noble Patents and  that Defendant's burden as movant "will be

satisfied if he can point to an absence of evidence to support an essential element of the

nonmoving party's claim."  *Id.* (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir.

1988)).  Accordingly, the R&R recommended granting summary judgment in favor of Defendant

on the issue of willful infringement.  Plaintiffs object.

Plaintiffs' objection begins by stating that the portion of Defendant's motion for

summary judgment concerning willfulness relied heavily on a decision from another judge in this

district: *Kaufman v. Microsoft Corp*, No. 1:16-CV-02880, 2020 WL 364136 (S.D.N.Y. Jan. 22,

2020) (AKH), and Plaintiffs disagree with that decision.  Pl. Obj. to R&R at 15–16.  But the

R&R explicitly did "not consider it necessary to reach" Defendant's *Kaufman*-based argument,

R&R at 44, and it is likewise unnecessary for the Court to address Plaintiffs' arguments

---

[2] To the extent that the motion seeks a ruling now on the legal standard for worldwide damages, that is a matter for motions *in limine* or requests to charge, not for summary judgment.

regarding that case.  Plaintiffs' lone objection to the R&R itself is that—in Plaintiffs' view—the R&R improperly faulted Plaintiffs for not responding to Defendant's affirmative defenses. Plaintiffs contend that, because Defendant supplied the usual boilerplate affirmative defenses inserted into every answer in patent infringement suits, "[t]here was nothing in [Defendant]'s affirmative defenses to respond to."  Pl. Obj. to R&R at 18.  But Plaintiffs have now had three additional opportunities to explain why Defendant failed to raise good faith defenses: (1) Plaintiffs' brief seeking summary judgment on the willfulness issue; (2) Plaintiffs' brief opposing Defendant's motion for summary judgment on the willfulness issue; and (3) Plaintiffs' objections to the R&R that is now before the Court.  Plaintiffs did not take advantage of any of these occasions to explain why Defendant's affirmative defenses were not made in good faith, beyond sparse, conclusory statements lacking citations that just generally attack Defendant's non-infringement defense. *See, e.g.*, *id.* ("[Defendant]'s non-infringement arguments are downright frivolous . . . .").  Furthermore, Plaintiffs do not argue in their objection to the R&R that Defendant's remaining affirmative defenses—invalidity, license/exhaustion/equitable estoppel, or failure to state a claim—were not made in good faith.  Accordingly, the Court perceives no error in the R&R's determination that Defendant's summary judgment motion on willfulness should be granted because Defendant pleaded multiple affirmative defenses in good faith.  Moreover, the Court has already determined that Defendant's implied license defense is meritorious in part. *See supra* Pt. II(B).

Furthermore, as the R&R highlighted, Plaintiffs have adduced no evidence that Defendant willfully infringed the Noble Patents.  "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he [or she] can point to an absence of evidence to support an essential element of the

nonmoving party's claim." *Brady*, 863 F.2d at 211. Defendant has spotlighted the dearth of evidence presented by Plaintiffs that could establish that Defendant willfully violated the Noble Patents, and Plaintiffs have not identified relevant evidence to the contrary. Accordingly, summary judgment in favor of Defendant on willfulness is proper. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### E. Plaintiffs' Motion for Summary Judgment that Defendant Infringed Claim 1 of the '697 Patent Is Denied

Plaintiffs sought an order of summary judgment that Defendant's N17 Locks directly infringed Claim 1 of the '697 patent. Pl. MSJ Br. at 1. Patent infringement requires that "each claim limitation . . . be present in the accused product, literally or equivalently." *Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). The '697 Patent covering the lock requires that the invention includes "first and second wedge lock elements configured to respectively engage [the] first and second sidewalls" of a security cavity and that, when locked, the wedge lock elements "*are engaged* with and *bear against* said side walls." Dkt. No. 145-3, '697 Patent document, Col. 7 (emphasis added). The R&R highlighted that, in Plaintiffs' photos of the allegedly infringing N17 Locks, there appears to be a space between the wedge lock elements (when in the locked position) and the sidewalls. R&R at 48. The R&R recommended that the Court deny Plaintiffs' summary judgment motion that Defendant directly infringed Claim 1 of the '697 Patent because, on the present record, a reasonable jury could determine that the N17 Locks do not engage with and bear against the sidewalls when in the locked position. *Id.* Because Plaintiffs object to that conclusion, the Court reviews it *de novo*.

Plaintiffs spill considerable ink attempting to refute arguments that Defendant made in its summary judgment brief distinguishing the N17 Locks from the Noble Lock. Pl. Obj. to R&R at 18–23. The R&R, however, addressed only Defendant's argument that the N17 Lock does not

engage with the side walls when in the locked position. R&R at 48. As that analysis suffices to deny the motion, the Court only addresses Plaintiffs' objection regarding that portion of the R&R.

As an initial matter, Plaintiffs object that whether the N-17 Locks' wedge elements "are engaged with and bear against [the] side walls" as required by the '697 Patent is a claim interpretation issue for the Court, rather than a factual dispute for the jury. Pl. Obj. to R&R at 23. Not so. Claim construction requires the Court to provide each term its generally accepted meaning. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978–79 (Fed. Cir. 1995); *Byrne v. Black & Decker Corp.*, 235 F. App'x 741, 745 (Fed. Cir. 2007). But determining "whether the construed claim reads on the accused product is for the finder of fact." *PPG Industries v. Guardian Industries Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998). Accordingly, although the Court's duty may extend to defining the term "are engaged with" and "bear against," the final determination of whether the N17 Locks meet those definitions is a factual question properly reserved for the jury. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) ("The . . . determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact.").[3]

The '697 Patent covering the Noble Lock requires that, when in the locked position, the wedge lock elements "*are* engaged with and *bear against*" the side walls. '697 Patent document, Col. 7 (emphasis added). Looking at the figures Plaintiffs provide showing the N17 Locks in the locked position, *see* Pl. Obj. to R&R at 20, a juror could perceive a space between the wedge

---

[3] The parties did not include any of these terms in their requests for a claim construction hearing and ruling on the meaning of such terms, commonly called a *Markman* hearing, and the previously-assigned district judge declined to construe the claims of the '697 Patent that *were* submitted as part of that earlier proceeding. *See* Dkt. No. 108.

lock element and the side walls. And Plaintiffs and Defendant plainly disagree on the factual

question of whether the N17 Locks' wedge elements, when in the locked position, are engaged

with and bear against the side walls. Thus, a factual dispute exists concerning whether the N17

Locks share each claim limitation of the '697 Patent, which is necessary for Plaintiffs to succeed

on their patent infringement claim. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d

Cir. 2007). Because a dispute concerning a material fact exists, Plaintiffs' motion for summary

judgment on direct infringement of the '697 Patent is denied.

### F. Plaintiffs' Motion for Summary Judgment that Claims 1, 4, 16, and 17 of Patent '422 Are Invalid Is Denied

Plaintiffs do not object to the R&R's recommendation that the Court deny Plaintiffs'

summary judgment motion that portions of the '422 Patent are invalid. Accordingly, the Court

reviews for clear error. As the R&R explained, the Court ordered the parties to serve their

invalidity contentions under Local Patent Rule 7 by July 27, 2018. Dkt. No. 45. Plaintiffs' July

27, 2018 invalidity contentions made no reference to the three patents that Plaintiffs now contend

are prior art. Dkt. No. 159-6. To date, over six years later, Plaintiffs have still not attempted to

supplement their invalidity contentions. The Court perceives no clear error in denying summary

judgment on this issue as several years too late. *Accord Ferring B.V. v. Serenity Pharms., LLC*,

No. 17-CV-09922, 2020 WL 1164700, at *2 (S.D.N.Y. Mar. 11, 2020) (dismissing an invalidity

argument for failure to include the theory in invalidity contentions); *Speedfit LLC v. Woodway

USA, Inc.*, 432 F. Supp. 3d 183, 214 (E.D.N.Y. 2020) (granting summary judgment on an

infringement claim for failure to abide by the applicable Local Patent Rule); *Nationwide Sales &

Servs. Inc. v. Envirocare Techs. Int'l, Ltd.*, No. 16-CV-06617, 2018 WL 2436969, at *6

(E.D.N.Y. May 30, 2018) (same), *aff'd*, 771 F. App'x 490 (Fed. Cir. 2019).

**G. Plaintiffs' Motion for Summary Judgment Dismissing Claims against Plaintiff Avganim Is Granted**

Finally, the R&R recommended dismissing the claims against Avganim because Defendant adduced no evidence that Avganim made, used, or sold an invention patented by Defendant and exceptional circumstances did not exist to justify piercing the corporate veil. Defendant does not object to this conclusion. Reviewing for clear error, the Court finds none and adopts the R&R's recommendation for the reasons stated therein.

**CONCLUSION**

For the foregoing reasons, the R&R is ADOPTED IN FULL. Plaintiffs' motion for summary judgment is GRANTED as to the dismissal of claims against Plaintiff Avganim and DENIED in all other respects; Defendant's motion for summary judgment is GRANTED as to non-infringement of the '476 Patent due to implied license, and lack of willfulness, and DENIED in all other respects.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 145 & 148.

Dated: September 19, 2025
        New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge